T. C. WRIGHT ET AL. *v.* EDWARDS HOTEL & CITY R. R. CO.

[58 South. 332.]

1. OPERATION OF STREET RAILROAD. *Mandamus. Judgment. Collateral attack.*

Where a street railroad, operating its road along a public highway under a franchise from the board of supervisors, ceased to operate a portion of the same and the board of supervisors declared the abandoned tracks a nuisance and ordered their removal from the highway, which was accordingly done, mandamus will not lie to compel the company to operate its cars on the abandoned tracks, though the action of the board was unwise or induced by fraud.

2. SAME.

Such order of the board of supervisors for the removal of the abandoned tracks cannot be attacked collaterally in a mandamus proceeding.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Petition by T. C. Wright et al. for a writ of mandamus against the Edwards Hotel and City Railroad Company. From a judgment dismissing the petition the petitioners appeal.

The facts are fully stated in the opinion of the court.

*A. H. Longino & Jas. R. McDowell,* for appellants.

By reference to Vol. 36, Cyc., page 1398, it will be seen that mandamus is the proper remedy to enforce whatever rights abutting property owners have against a street railway which seeks to abandon a part of the line constructed and operated by virtue of a contract with the municipality. I shall also quote a few cases which will dispel any doubt on this point.

"A street railway company which has accepted the grant of a public franchise, involving the performance of certain services, can be compelled by mandamus to perform such service." *Oklahoma City* v. *Railroad Co.,* 93 Pac. (Okla.) 48.

"Mandamus is the proper remedy to compel such street railway company to perform the duty of maintaining and operating such railway for the benefit of the public. The public duty imposed upon the company is always active, and imperative, and must be executed until lawfully surrendered, suspended or abandoned by the legally expressed consent of the state; and the performance of this duty can be lawfully enforced by mandamus." *State ex rel.* v. *Traction Company,* 45 L. R. A. (N. J.) 837.

"Mandamus is the proper remedy to compel a street railway company to perform its duty of maintaining and operating its road for the benefit of the public. *State ex rel.* v. *Traction Co.,* 62 N. J. L. (N. J. Sup.), 592, 43 Atl. 715, 2 L. R. A. Digest, 2009.

"The operation of a street railway can be enforced by mandamus where a company which has acquired the right and commenced to perform the service attempts to discontinue it." *State ex rel.* v. *Street Railway Co.,* 19 Wash. 518, 53 Pac. 719; *State ex rel.* v. *A. C. L. R. Co.,* 53 Fla. 650; *So. Ex. Co.* v. *Rose,* 124 Ga. 581, 53 S. E. 185; *Robbins* v. *Bangor R. & E. Co.,* 100 Me. 496; *People* v. *Railroad Co.,* 35 L. R. A. 656; *State* v. *Transfer Co.,* 83 N. W. 32; *I. C. R. R. Co.* v. *People,* 143 Ill. 434, 33 N.

E. 173; *Loraine* v. *Railroad,* 205, Pa. 132, 54 Atl. 580;
*State* v. *Railroad Co.,* 57 N. W. 970; *Loader* v. *Heights,*
35 N. Y. Sup. 996. See also L. R. A. Digest 2, pages
2008, 2009.

The next point which I desire to discuss is, the right
of abutting property owners and residents of an aban-
doned portion of track to invoke this relief. Of course
they have the right to this relief, if they are entitled to
the service. Our contention is that having once ac-
cepted and enjoyed by virtue of this franchise the use
of the Clinton road, and having once constructed and
operated a line along this road to the Livingston Park
entrance; the appellee was without authority to aban-
don any portion of the line which it had ever constructed
and operated. The court will see that the railroad com-
pany is given the right to use the road. It is not com-
pelled to do so, but when it once accepts the franchise
and when it once enters upon the user of the street,
and when it once constructs and maintains a line of
railway along this road, the persons who live on its
line and buy and improve property because of the car
service have a vested right to that service.

In support of this line of argument, I cite the court
to the case of *State ex rel.* v. *Street Railway Co.,* re-
ported in 41 L. R. A. (O. S.) page 515. This case is
almost identical with the case at bar, and I therefore
request a careful reading of the very lucid opinion of
the court, especially pages 518 and 519. I quote from
the syllabi as follows:

"One who lives adjacent to a street railway and owns
considerable property there which he has improved, re-
lying upon the facilities afforded by the line, has a
material individual interest which entitled him to be a
relator in a mandamus to enforce the operation of the
line."

"A street railway company which has received from
the state and entered upon the enjoyment of a franchise

for its business cannot cease to operate the line without consent of the granting power."

"The operation of a street railway can be enforced by mandamus where a company which has acquired a right and commenced to perform the service attempts to discontinue it."

"The absence of any grant or privilege or franchise to operate a street railway will not relieve a company which has occupied the streets for such purpose for several years from the duty to continue the service."

We maintain that the franchise granted to the railway company by the board of supervisors, when accepted becomes binding upon the company. The county says to the railway company, you may have the use of my streets upon which to operate your street car system. The street car company says to the county, we will take so much of your road and thereupon does take that portion of the road and builds a track upon it. It has a right to take more, within the limits of the franchise, if it desires. Whenever it takes and uses a portion of the road for the operation of its system, the franchise being thus accepted becomes a contract binding upon both parties. The railway company can force the county to permit the use of its roads according to the terms of the franchise, and the county or any one affected thereby can enforce compliance by the railroad company with its contract. As well said by Mr. Booth on Street Railways, page 6, "The franchise can be granted only for a public use and upon public consideration." And further on page 10, "A franchise is a privilege conferred by the sovereignty upon natural or artificial persons exercising powers which they could not lawfully assume except in pursuance of such a grant. It emanates from the government, and owes its existence to a grant." See also 27 Am. & Eng. Ency. of Law (2 Ed.), 23. "No escape for a breach of the conditions of the franchise is afforded by the mere fact that performance would

put the company to great inconvenience and cause a large outlay of money, or that by reason of insolvency it is unable to perform.'' 27 Am. & Eng. Ency. of Law, p. 55.

Coming now to the last point which I shall discuss, to-wit: the order of the board of supervisors, declaring the extension to be a nuisance, I maintain that this order is void, *per se.* I deny that the board has a right to declare the property of any one a nuisance or an obstruction to the street and order its summary removal, without notice, much less without petition or complaint. Could the board declare the A. & V. R. R. track an obstruction to the Clinton road and put the convicts immediately to work and tear the track up, without notice to the owners of the railroad company? If this three hundred and fifty foot extension was an obstruction to the highway, the board should have given notice to the owners of this extension to appear to be heard and then should have taken some proof before adjudicating the matter. But even if the board had adjudicated it to be an obstruction, it had not the power summarily to remove it. It should have notified the owner to remove the obstruction or abate the nuisance. But I deny that the board had a right, without a hearing, to declare a thing an obstruction which had been in existence for five years, unless the owners, and others affected by the adjudication should be given an opportunity to be heard. I agree with witness McNeill, the board was made a cat's paw of, in order to furnish a defense for the railway company to hide behind.

*Williamson & Wells,* for appellee.

The board of supervisors, having the public road worked, went out and looked at it, declared it by proper ordinance to be an obstruction to the public road and had it removed. The railroad had no right to object and it could not use the track belonging to other per-

sons, and it is shown by the evidence in this case that it was an obstruction to the road, that it was built along the ditch that was necessary to properly drain the public road, and not in the middle of the road with a pass way for vehicles on each side. Mr. Livingston the owner of the land complained to the board that it obstructed the drainage and that in order to properly drain the road, they had dug a deep ditch through a small elevation in order to run the water west instead of east where it naturally ran, and that it made it impossible for him to enter his land, by reason of this deep ditch.

In accordance with this complaint the board ordered the track taken out of the way as an obstruction. In passing such ordinance the board exercised a right which it had by authority of law and which it had reserved to itself in the very ordinance granting the franchise.

Mr. Wright does not show that he had any clear and distinct legal right to demand that the street car company run up to the front of his store, and he has not shown that it was the duty of the railroad company to the public to maintain that three hundred feet of track on the side of the road and run its cars over it. Unless this is the case, Mr. Wright cannot maintain a mandamus. His only complaint, the court will see from reading his evidence, is that his trade might be cut off to some extent.

If he had any personal rights in the matter and was damaged by the railroad's not running its cars up to his store a clear and distinct and perfect remedy at law against the railroad company for any damages he might have sustained. Under that state of facts the law is clear and it is held in many jurisdictions that mandamus will not lie.

It is held by the court in Mississippi, in the case of *State Board of Education* v. *West Point,* 50 Miss. 638,

"mandamus only lies where there is a clear specific legal right and duty to be performed and there is no other adequate legal remedy." Also in the following cases the same principle is laid down as the law." *Swan* v. *Buck,* 40 Miss. 268; *Ross* v. *Lane,* 3 S. & M. 695; *Carrol* v. *Board of Police,* 6 C. 38; *Beaman* v. *Leake,* 42 Miss. 238; *Board of Police, Attalla Co.* v. *Grant,* 9 S. & M. 77.

We say that the lower court was correct in his decision of the case.

Argued orally by *J. R. McDowell,* for appellant.

McLEAN, J., delivered the opinion of the court.

The appellee and its predecessors operated a street railroad in the city of Jackson, having first obtained a franchise from the city. It also obtained a franchise from the board of supervisors of Hinds county, authorizing it to extend its line on the public road in the county. The railway company built its track out West Capitol street as far as a point known as Battle Hill, and afterwards the line was extended to where the Old Ladies' Home is now located. Afterwards, in the year 1903, a suburban park, known as Livingston Park, was opened up, and a pavilion where vaudeville performances were conducted was erected in said park. This park was about three hundred and fifty feet west of the western terminus of the street car line. The owners of this park, conceiving it to be to their interest to have the car line extended out to a point immediately in front of its pavilion, induced the railway company to extend its line to that point. The owners of the park were to furnish the steel rails, and the street railway company was to furnish the other materials and to construct the line, which was done. Prior to January, 1909, the lease on the Livingston Park expired, the pavilion was torn down, and the park discontinued. Thereupon the lessees of the park demanded of the street railway that it

purchase the steel rails which had been furnished by
the park company, or pay rent on the same for the use
thereof.  The railway company declined to do either, and
discontinued running its cars out from the Old Ladies'
Home to this park, which is a distance of about three
hundred and fifty feet.  The appellants, being property
owners near the Livingston Park entrance, were thereby
deprived of the car service for this distance of about
three hundred and fifty feet; and thereupon, on the sec-
ond day of August, 1909, the appellants filed a petition
for a writ of mandamus, praying the judgment of the
court for a writ of mandamus to require the railroad
company to continue to operate its cars to the point
at the end of the line opposite Livingston Park.

While this suit was pending, and before it came to
trial, the board of supervisors, at the regular Septem-
ber term, 1909, made an order to the effect that:  "It
appearing to the board that for a distance of about three
hundred and fifty feet beyond the present terminus of
the street railway line, in front  of  the  Old  Ladies'
Home, a railroad track was constructed for the benefit
of the Livingston Park Company, said track being built,
as is shown by the recent survey of the public road,
partly upon the  public  highway  and  partly upon the
lands belonging to S. Livingston, the line between the
lands of the said S. Livingston and the public road be-
ing located at or near the center of the said track, and
it further appearing to the board that said track has
been abandoned for the purposes for which it was con-
structed, and is no longer used to run cars upon, and is
an impediment and obstruction to the public highway,
and interferes with the proper drainage of the road, it
is now ordered that the said track be taken up and re-
moved from the public road, from a point at the entrance
of what is known as Livingston Park, for a distance of
about three hundred and fifty feet, to the point in front
of the Old Ladies' Home, where the street cars are now

stopping. It is further ordered that Joe Lewis, sergeant of the county convict camp, be and is hereby directed to take up and remove said track as an obstruction to the highway.'' On a subsequent day of the same term the appellants in this case presented their petition to the board of supervisors, praying the board to vacate its order theretofore made, and, this petition coming on to be heard, it was rejected and refused by the board. These petitioners did not appeal from this order, but the order of the board stands in full force and effect. The petition for the mandamus coming on to be heard, and tried by agreement before the circuit judge, it was adjudged that the petitioners were not entitled to the relief prayed for, and the petition was denied, and the suit dismissed, and from that judgment an appeal is prosecuted to this court.

Upon the very threshold of their case, appellants are met with the proposition that the board of supervisors found that the track of the defendant railway company had been abandoned for the purposes for which it had been constructed, and declared it a nuisance, ordered it to be removed, and in pursuance of said orders the sergeant of the county convict camp removed the said railroad track. The argument of the appellant is that the order of the board is void because it was procured through fraud; the evidence of fraud being that the order was passed at the instance of the street railway company, and that consequently the defendant cannot defend under such circumstances. Granting that the order was procured at the instance of the defendant, there can be no question that the appellee had the right to surrender its franchise with the consent of the board that granted the franchise. The board has full jurisdiction over the public roads, conferred upon it by the Constitution, and manifestly, in a proceeding like this, the courts have no power to interfere on the sole ground that the action of the board was unwise or not condu-

cive to the public good, if, indeed, in any proceeding, the courts have this power. *Monroe County* v. *Strong,* 78 Miss. 565, 29 South. 530. Suppose that this court should grant the prayer of appellant's petition, and command the street railway company to restore the track; would not the board of supervisors still have the power to deny to the street railway company the right to lay and maintain its track upon the public roads of the county? Courts will not do a vain thing.

Under the proceedings in this case the question as to the power of the board to revoke the franchise and to cause to be torn up the track of the street railway company cannot be raised. This is a mere collateral attack made upon the judgment entered by the board, and if this judgment can be annulled, the fact that the street railway company consented to the order is not sufficient to justify us in holding that the order was void. The granting by the board of supervisors to the railroad company of the privileges or franchises as being grants of vested rights, of which the grantee cannot be deprived at the will of the board, is not involved in this controversy. It may be and doubtless is true, but as to which we express no opinion, that the grant is a vested right, and that the railroad cannot be deprived of it, except by a judicial proceeding, of which it must have due and legal notice. But as the grantee has not and does not complain of the action of the board in ordering the track removed, we are not aware of any principle which will authorize, in a proceeding like this, any court to compel the railroad to rebuild the track and to resume its service.　　　　　　　　　　　　　　　　*Affirmed.*